ZUKERMAN GORE BRANDEIS
& CROSSMAN, LLP
Justin Greenblum
Eleven Times Square
New York, New York 10036
(212) 223-6700
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BRUNO SCOTTI,

          Plaintiff,

   -against-

VELOCITY GROUP USA, INC.,

          Defendant.

Case No. 19-CV-3487

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff **BRUNO SCOTTI**, by and through his attorneys Zukerman Gore Brandeis & Crossman, LLP, as and for his **COMPLAINT** against defendant **VELOCITY GROUP USA, INC.** ("Velocity") hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction of this matter pursuant to 18 U.S.C. § 1030(a)(2)(C), 18 U.S.C. § 1030(a)(5)(C), and 18 U.S.C. § 1030(c)(5)(C) because this litigation involves loss to one or more persons during any one-year period aggregating at least $5,000 in value resulting from unauthorized access of a protected computer causing damage and loss.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

3. Bruno Scotti is a citizen of the State of New York, who is domiciled at 323 Ramona Avenue, Staten Island, NY 10312.

4. Velocity is a citizen of the State of New York, organized and existing under the laws of New York, which maintains its principal place of business at 290-300 Broadhollow Road, Melville, New York 11747. Velocity is in the Merchant Cash Advance industry, which is the business of making loans to small businesses.

5. Velocity is comprised of five partners: Trace Feinstein the Chief Operating Officer and Chief of Syndication, Adam Schwartz the Chief Technology Officer, Christopher Clark, Robert Fallah, and Adam Frieman the Chief Financial Officer.

6. Velocity's tech department is supported by individuals located in Dhaka, India.

## THE FACTS

7. Mr. Scotti has been working in the Merchant Cash Advance industry since August 2016. During that time he has built up a significant book of business with a value exceeding $1 million annually.

8. Over the course of working in the Merchant Cash Advance industry for 34 months, Mr. Scotti developed relationships with many clients.

9. Since August 2016, Mr. Scotti has maintained a personal Dropbox account (the "Scotti Dropbox").

10. Dropbox is a cloud-based service that allows users to create secure storage areas that can be accessed via the internet.

11. Mr. Scotti used the Scotti Dropbox to store personal files, including family photos, and files related to his business.

12. Mr. Scotti stored valuable contact information and documents related to his clients in the Scotti Dropbox for deals which Mr. Scotti had closed for his clients. This information was required to broker deals for his clients.

13. Since the Merchant Cash Advance industry has a renewal rate of approximately 50-75%, having all of the pedigree and financial information for clients is of vital importance to managing and monetizing one's book of business in this industry.

14. As of June 2, 2019, the Scotti Dropbox contained over 3,000 files, the majority of which were his client files and unique training materials Mr. Scotti developed since August 2016 (the "Scotti Dropbox Data").

15. The Scotti Dropbox Data is unavailable to Mr. Scotti outside of the Scotti Dropbox.

16. The Scotti Dropbox Data has value of greater than $1 million.

17. In or around January or February 2019, Mr. Scotti was recruited by Velocity to run Velocity's sales division as a 1099 independent contract.

18. On February 1, 2019, Mr. Scotti signed an agreement with Velocity establishing terms of his working relationship with Velocity (the "February 1 Agreement").

19. On February 12, 2019, Mr. Scotti began his first day of work with Velocity.

20. Mr. Scotti's responsibilities at Velocity included, among other things, helping Velocity's sales contractors run deals, closing deals, and aiding administration of documents needed to close deals. Velocity's sales representatives all reported to Mr. Scotti.

21. On February 12, 2019, Adam Schwartz, the Chief Technology Officer for Velocity, granted Mr. Scotti Branch Manager access to Velocity's CRM and automated dialer system and authorized Mr. Scotti to access Velocity's CRM from his laptop while traveling to and from work and while on vacation.

22. CRM stands for Customer Resource Management, and is a web-based platform that, with the proper authorization, can be accessed anywhere there is an internet connection.

23. On February 11, 2019, Velocity issued Mr. Scotti a computer for Mr. Scotti's use at Velocity's office.

24. In or around February 2019 Velocity instructed Mr. Scotti to back up any files he used in conjunction with working with Velocity.

3

25. Backing up files is an industry standard practice and is part of the normal course of business for someone who is heading a Merchant Cash Advance sales department.

26. Velocity did not provide Mr. Scotti with the means or method to back up his files.

27. As an independent contractor, Mr. Scotti understood that he was responsible to determine his own solution for backing up his files.

28. Mr. Scotti used the Scotti Dropbox to back up his files related to his work with Velocity. To this point, the only information provided by Velocity to Mr. Scotti that he backed up on the Scotti Dropbox was certain leads data.

29. Mr. Scotti accessed the Scotti Dropbox on his computer issued by Velocity to back up his files.

30. Mr. Scotti never provided Velocity, nor anyone else other than himself, with the password for the Scotti Dropbox nor provided anyone at Velocity permission to access the Scotti Dropbox.

31. When recruiting Mr. Scotti, Velocity promised that they would supply Mr. Scotti with unadulterated, proprietary leads data mined by Velocity's software. Velocity promised that this data would not be bought from a reseller.

32. After beginning his work with Velocity, Mr. Scotti learned that, despite their representations to the contrary, Velocity bought all of their leads data from a reseller named Brian Froelich.

33. None of the leads data Velocity provided to Mr. Scotti were private, proprietary, or unique in any way.

34. The leads data Velocity provided to Mr. Scotti was frequently sold and resold by Velocity and Brian Froelich to other Merchant Cash Advance companies.

35. During Mr. Scotti's time working for Velocity, Mr. Scotti himself never closed a single transaction from the leads data that was provided by Velocity. While Mr. Scotti, and his team, closed over $5,000,000 in transactions during his short time at Velocity, all of the transactions that were directly closed by Mr. Scotti were sourced from his own book of business

developed prior to beginning his working relationship with Velocity. Notwithstanding this, Velocity shared in all the commissions for these transactions pursuant to the February 1 Agreement.

36. On June 3, 2019, after working with Velocity for 16 weeks, Mr. Scotti terminated his business association with Velocity due to multiple breached material promises made by Velocity to Mr. Scotti.

37. Mr. Scotti was not present at Velocity's office on the day he terminated his business association with Velocity.

38. On June 5, 2019, Mr. Scotti logged on to the Scotti Dropbox and discovered that all of the data within it had been deleted.

39. On June 5, 2019, Mr. Scotti contacted Dropbox to investigate how the Scotti Dropbox Data had been deleted without Mr. Scotti's authorization.

40. During Mr. Scotti's conversation with Dropbox, the representative from Dropbox advised Mr. Scotti that Dropbox's system is set-up with geo-location software so that Dropbox and its users can determine the location of anyone accessing someone's Dropbox account. Dropbox also advised Mr. Scotti that Dropbox can identify the specific IP addresses for any computer that accesses someone's Dropbox account, but that information could only be retrieved via subpoena.

41. Mr. Scotti learned from Dropbox that on June 4 and 5, 2019, the Scotti Dropbox was accessed from the location of Velocity's office and all files within were deleted. Mr. Scotti learned that subsequent to that access, the Scotti Dropbox was accessed again from Dhaka, India, the location of individuals supporting Velocity's tech department, and a file named "Velocity Group" was added to the Scotti Dropbox then deleted.

42. On June 4 and 5, 2019, Mr. Scotti was not at Velocity's offices nor was he in Dhaka, India.

43. On June 5, 2019, Mr. Scotti requested Dropbox to recover the Scotti Dropbox Data. Dropbox informed Mr. Scotti that person(s) who accessed the Scotti Dropbox permanently deleted the data and that data could not be recovered by Dropbox.

44. During his time associated with Velocity, Mr. Scotti had multiple conversations with Adam Schwartz, Velocity's Chief Technology Officer, wherein Mr. Schwartz stated that Velocity has keylogging tracking software installed on its computers. Mr. Schwartz also discussed and bolstered his own computer prowess and capabilities and identified that Velocity's tech support is located in India.

45. Upon information and belief, On June 4 and 5, 2019, Velocity, or an agent or agents of Velocity, accessed the Scotti Dropbox without Mr. Scotti's authorization or permission and deleted the entirety of the Scotti Dropbox Data.

**FIRST CLAIM FOR RELIEF**
(Violation of the Computer Fraud and Abuse Act)

46. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

47. From August 2016 until June 3, 2019, Mr. Scotti accumulated and stored the Scotti Dropbox Data in the Scotti Dropbox, a personal Dropbox account that could be accessed via the internet.

48. Mr. Scotti never provided anyone at Velocity, or anyone else, with permission to access the Scotti Dropbox.

49. On June 4 and 5, 2019, the Scotti Dropbox was accessed without Mr. Scotti's knowledge from the location of Velocity's office and the Scotti Dropbox Data was deleted.

50. The Scotti Dropbox Data was stored only in the Scotti Dropbox.

51. The deletion of the Scotti Dropbox Data rendered it unavailable to Mr. Scotti because Mr. Scotti has no means to recover or replace the Scotti Dropbox Data.

52. The Scotti Dropbox Data was an integral and necessary part of Mr. Scotti's business and livelihood.

53. The inability to use the Scotti Dropbox Data has caused, is causing, and will cause Mr. Scotti to lose substantial revenue and profits.

54. As a result of Velocity's deletion of the Scotti Dropbox Data, Mr. Scotti has suffered and will suffer financial damages in an amount to be proven at trial, but in an amount presently believed to be in excess of $1 million.

**WHEREFORE,** Mr. Scotti demands a judgment as follows:

A. Damages in a sum to be determined at trial, presently believed to be in excess of $1,000,000;

B. All costs, expenses, and fees, including but not limited to all reasonable attorneys' fees;

C. Prejudgment and post-judgment interest; and
D. Such other, further or different relief as the Court deems just or equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by a jury on all issues so-triable.

Dated: New York, New York
June 12, 2019

    ZUKERMAN, GORE BRANDEIS
    & CROSSMAN, LLP

    By: /s/ Justin Greenblum
    Justin Greenblum
    Eleven Times Square
    New York, New York 10036
    (212) 223-6700
    *Attorneys for Plaintiff*